UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ESTEBAN HERNANDEZ,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>WARDEN HOWELL, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 2:18-CV-1449-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 102] |

This case involves a civil rights action filed by Plaintiff Esteban Hernandez ("Hernandez") against Defendants Romeo Aranas ("Aranas"), James Dzurenda ("Dzurenda"), Henry Landsman ("Landsman"), Michael Minev ("Minev") and Jerry Howell ("Howell") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 102, 104, 109.)[2] Hernandez opposed the motion, (ECF No. 110), and Defendants replied. (ECF No. 112, 114.)[3] For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 102), be granted.

**I.    PROCEDURAL HISTORY**

Hernandez is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC"). On August 3, 2018, Hernandez filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Hernandez was incarcerated at the Southern Desert Correctional Center ("SDCC"). (ECF No. 5.) On December 2, 2019, the District Court entered a screening order on Hernandez's complaint (ECF No. 4), allowing

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 104 consists of Hernandez's medical records filed under seal. ECF No. 109 is an erratum to the motion for summary judgment.

[3]    ECF No. 114 consists of Hernandez's medical records filed under seal.

Hernandez to proceed on an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants based on denial of treatment for hepatitis C ("Hep-C"). (*See id.* at 6.) The District Court dismissed, without prejudice, an Eighth Amendment violation based on failure to inform Hernandez that he had tested positive for Hep-C and conduct follow-up testing. (*Id.*)

Around the same time Hernandez filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that the NDOC's policy for treating hep-C amounted to deliberate indifference in violation of the Eighth Amendment. (*See* ECF No. 6.) Thus, the Court consolidated numerous actions, including Hernandez's case, for the purpose of conducting consolidated discovery. (*See* ECF No. 7.) Hernandez opted to be excluded from the class action, but his case remained stayed through the pendency of the class action. (*See* ECF No. 10.) On September 2, 2020, the stay was lifted in this case. (ECF No. 12.) On December 11, 2020, Hernandez filed an amended complaint, without first seeking leave of court. (ECF No. 32.) Thus, the Court struck the improperly filed complaint, with leave to re-file the amended complaint with an accompanying motion requesting to do so, as required in accordance with Local Rule 15-1(a). (ECF No. 34.) On December 21, 2020, Defendants filed their notice of acceptance of service for the original complaint. (ECF No. 33.) Defendants filed their answer on December 31, 2020. (ECF No. 35.) On January 12, 2021, Hernandez filed his motion for leave to file an amended complaint to add two additional Defendants Dr. Henry Landsman and Medical Director Michael Minev to his Eighth Amendment deliberate indifference claim. (ECF No. 37.) The Court granted Hernandez's motion to amend in its entirety, (ECF No. 49) and the amended complaint is now the operative complaint in this case (ECF No. 50).

On April 14, 2022, Defendants filed their motion for summary judgment arguing Hernandez cannot prevail as: (1) Hernandez was treated appropriately and in accordance with the medical directives and standards of care; (2) many of the Defendants were not treating physicians and thus did not personally participate in the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (ECF No. 102.)

## II. FACTUAL BACKGROUND

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. "HCV" is chronic Hep-C as diagnosed by a qualified medical practitioner. (ECF No. 102-2 at 17.) Chronic Hep-C results in liver fibrosis. (ECF No. 102-7 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of HCV at the NDOC. (*See* ECF No. 102 at 5.) At the time Hernandez filed his initial grievance related to his Hep-C treatment at issue in this case, inmates that tested positive for HCV were enrolled in the Infectious Disease Chronic Clinic for Hep-C. (*Id.*) A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 102-7 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) Direct acting antiviral ("DAA") treatment, such as Epclusa, is an FDA-approved treatment for HCV. (ECF No. 102-1 at 6 (defining DAA).)

The current version of MD 219 established three priority levels for DAA treatment. (*Id.* at 7-12.) This priority level system guarantees that all HCV patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 10.)

Hernandez was enrolled in the Chronic Disease Clinic for HCV in 2012 and was continuously followed by NDOC for the disease. (ECF No. 104-1 (sealed).) On October 18, 2018, Hernandez's APRI score was 0.718 and he did not exhibit any symptoms of decreased liver function. (ECF No. 102-7 at 4.) At the time Hernandez began grieving this issue in late 2016, Minev states Hernandez was not a candidate for the advanced Chronic Hepatitis-C treatment program available at the time. (*Id.*)

On February 27, 2019, Hernandez received a CT scan of his abdomen, which showed a "large irregularly shaped hypoattenuating lesion in the lateral segment of the left hepatic lobe. Finding may represent focal hepatic steatosis." (ECF Nos. 104-3 (sealed).) The CT scan otherwise showed that Hernandez's liver and portal veins, gallbladder, spleen, pancreas, adrenals, kidneys, distal esophagus, stomach were all "normal". (*Id.*) On February 28, 2019, Hernandez received an MRI, which showed cholelithiasis and two hepatic nodules. (*Id.*) A follow-up MRI performed on March 4, 2019 showed a large left lobe liver hemangioma. (*Id.*) An additional MRI was performed on June 20, 2019, which again indicated a stable hemangioma without a malignant type enhancement. (ECF No. 104-4 (sealed).) A follow-up visit with an oncologist was recommended and approved by NDOC in July 2019. (ECF No. 104-6 (sealed).) Dr. Carducci, an outside medical provider, determined a biopsy was not necessary. (ECF Nos. 104-7, 104-8 (sealed).) A second MRI was performed on January 7, 2020, which indicated a stable, marginally smaller mass and no new lesions in the liver. (ECF No. 104-5 (sealed).)

In 2020, Hernandez received DAA treatment Epclusa and lab work completed in April 2021 shows Hernandez is no longer positive for HCV. (ECF Nos. 104-2, 104-9 (sealed).)

### III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz*

*Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923

(9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV. DISCUSSION

On April 14, 2022, Defendants filed the instant motion for summary judgment arguing: (1) Defendants were not deliberately indifferent to Hernandez's serious medical needs; (2) Howell, Aranas, Dzurenda, and Minev had no personal participation in the alleged constitutional violations; and (3) alternatively, Defendants are entitled to qualified immunity. (ECF No. 102.)

### A. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105. Article 1, Section 6 of the Nevada Constitution mirrors the Eighth Amendment's Cruel and Unusual Punishment Clause, and provides protections that are coextensive with the Eighth Amendment of the United States Constitution. Courts in this district have applied the same legal standards to the cruel and unusual punishment

corollary included in Article 1, Section 6 of the Nevada Constitution as are applied to the corollaries in the United States Constitution. *See, e.g, Fowler v. Sisolak*, No. 2:19-cv-01418-APG-DJA, 2020 WL 6270276, at *4 (D. Nev. Oct. 26, 2020).

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due

care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care...." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1. Analysis

Starting with the objective element, the parties agree that Hernandez's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Hernandez cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Hernandez's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Hernandez's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Hernandez to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Hernandez received while incarcerated related

to his Hep-C. (*See* ECF Nos. 104-1, 104-2, 104-3, 104-4, 104-5, 104-6, 104-7, 104-8, 104-9 (sealed).) According to this evidence, Hernandez was first enrolled in CCC for monitoring of his Hep-C in 2012. (ECF No. 104-1 (sealed).) Hernandez received routine care through the CCC for his Hep-C. (*Id.*)

On October 18, 2018, Hernandez's APRI score was 0.718 and he did not exhibit any symptoms of decreased liver function. (ECF No. 102-7 at 4.) APRI scores of above 0.5 indicate there is likely some liver damage (fibrosis). (*Id.* at 3.) APRI scores above 1.5 indicate a patient likely has or is quickly approaching cirrhosis of the liver. (*Id.*) At the time Hernandez began grieving this issue in late 2016, Minev states Hernandez was not a candidate for the advanced Chronic Hepatitis-C treatment program available at the time. (*Id.*).

On February 27, 2019, Hernandez received a CT scan of his abdomen, which showed a "large irregularly shaped hypoattenuating lesion in the lateral segment of the left hepatic lobe. Finding may represent focal hepatic steatosis." (ECF Nos. 104-3 (sealed).) The CT scan otherwise showed that Hernandez's liver and portal veins, gallbladder, spleen, pancreas, adrenals, kidneys, distal esophagus, stomach were all "normal". (*Id.*) On February 28, 2019, Hernandez received an MRI, which showed cholelithiasis and two hepatic nodules. (*Id.*) A follow-up MRI performed on March 4, 2019 showed a large left lobe liver hemangioma. (*Id.*) An additional MRI was performed on June 20, 2019, which again indicated a stable hemangioma without a malignant type enhancement. (ECF No. 104-4 (sealed).) A follow-up visit with an oncologist was recommended and approved by NDOC in July 2019. (ECF No. 104-6 (sealed).) Dr. Carducci, an outside medical provider, determined a biopsy was not necessary. (ECF Nos. 104-7, 104-8 (sealed).) A second MRI was performed on January 7, 2020, which indicated a stable, marginally smaller mass and no new lesions in the liver. (ECF No. 104-5 (sealed).)

In 2020, Hernandez received DAA treatment Epclusa and lab work completed in April 2021 indicate Hernandez is no longer positive for HCV. (ECF Nos. 104-2, 104-9

(sealed).)

Defendant Aranas, former Medical Director for the NDOC, and Defendant Dzurenda, former Director of the NDOC, each filed declarations in support of the motion for summary judgment, stating that they did not recall having direct interactions with Hernandez and did not treat Hernandez. They further stated that they did not deny treatment to Hernandez, as decisions for treatment were made by the Utilization Review Panel or the treating physician. (ECF No. 102-3, 102-6.)

Defendant Howell, Warden for the NDOC, filed a declaration in support of the motion for summary judgment, stating that he had no authority to order treatment for HCV for Hernandez, as he was not part of the committee that could have ordered treatment, and Howell did not recall any contact with Hernandez relating to his medical conditions and did not substantively respond to any medical grievances. (ECF No. 102-4.)

Defendant Landsman, former Senior Physician at the SDCC, filed a declaration in support of the motion for summary judgment, stating Hernandez has been under the continuous care of many NDOC doctors. Landsman was not a member of the Hepatitis Review Committee tasked with the responsibility of approving treatment for Hep-C, he did not deny Hernandez treatment, and referred him to outside medical care when indicated. Landsman did not diagnose with Hernandez as suffering from advanced cirrhosis of the liver or as suffering symptoms associated with HCV infection. Hernandez did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. (ECF No. 102-5.)

Defendant Minev, current NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at SDCC. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment.

In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for HCV and are otherwise medically indicated receive advanced treatment. (ECF No. 29-5.)

Moreover, as to Hernandez specifically, Minev stated he reviewed Hernandez's medical records and can attest that Hernandez suffered from Chronic Hepatitis C and his APRI score, based on blood test results in October 2018, was 0.718. Hernandez did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Hernandez's APRI score and lack of clinical signs indicating decreased liver function, Hernandez was not a candidate for HCV treatment at the time of his grievance. Hernandez has since received treatment and no longer shows HCV in his system. (ECF No. 102-7.)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Hernandez's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Hernandez to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Hernandez's opposition reiterates his claim that the delay in providing him treatment for his Hep-C caused him further damage, including what he asserts is a cancerous tumor on his liver. (ECF No. 110.) Hernandez asserts Defendants were deliberately indifferent to Hernandez because they failed to test Hernandez for multiple years and have failed to do a biopsy to determine the "extent of cancer". (*Id.* at 25.) Hernandez points to several of his own medical records, mainly lab records, to support

his assertions. However, as discussed above, Hernandez's medical records from the Centennial Hills Hospital showed a hepatic nodule, which was described as: "Statistically, the differential in a noncirrhotic patient without a history of malignancy favors benign etiologies". (ECF No. 104-3, 104-4 (sealed).) The records indicate Hernandez does not have cirrhosis of the liver, and the nodule is likely benign. The benign nature of the nodule was confirmed in follow up visits, and Dr. Carducci, an outside medical provider, did not feel that a biopsy of the "stable hemangioma" was necessary. (ECF No. 104-7, 104-8 (sealed).)

Aside from his own assertions and medical records (much of which were provided with Defendants' summary judgment), Hernandez provides no further evidence or support that a delay in treatment for his Hep-C was the cause of any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Hernandez was treated for his Hep-C through monitoring and other actions and there is no evidence showing that his Hep-C or any delay in providing treatment was the cause of any damage. Further, there is no evidence that Hernandez's nodule is cancerous. Therefore, Hernandez has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Hernandez's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Hernandez has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Hernandez fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Hernandez has only shown that he

disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his HCV monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the medical deliberate indifference claim be granted.[4]

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 102), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 102), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: September 7, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the Court finds that Hernandez's claim fails on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.